# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ARNOLD KUCHTA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CREDIT MANAGEMENT CONTROL, INC., <br><br> Defendant. | Case No.: 20-cv-129 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Arnold Kuchta is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendant sought to collect from Plaintiff arose from an agreement or series of agreements to defer payment.

6. Defendant Credit Management Control, Inc. ("CMC") is a domestic business corporation with its principal place of business located at 1263 Main Street, Suite 212, Green Bay, Wisconsin 54302.

7. CMC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. CMC is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. CMC is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions ("DFI") pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. CMC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about January 7, 2020, Defendant mailed Plaintiff a debt collection letter regarding an alleged debt owed to "Creditor: CITY OF FRANKLIN." A copy of this letter is attached to this Complaint as Exhibit A.

12. Upon information and belief, the alleged debt identified in Exhibit A was incurred as the result of a transaction for personal medical services in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 2014cv5354 (Milwaukee Co. Cir.

Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment'").

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

15. Upon information and belief, Exhibit A was the first letter Defendant sent to Plaintiff regarding this alleged debt.

16. Exhibit A contains language that largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

17. Exhibit A also includes the following representations:

> Creditor : CITY OF FRANKLIN
>
> | Last Activ. | Account # | | Balance |
> |---|---|---|---|
> | 05/19/2019 | ▉852 | CITY OF FRANKLIN | $200.00 |

18. The remittance slip in Exhibit A lists Defendant's Green Bay address:

> IF PAYING BY CREDIT CARD, FILL OUT BELOW.
>
> ☐ Mastercard  ☐ Visa  ☐ Discover  ☐ American Express
>
> CARD NUMBER    3 or 4 Digit Security Code (on back of card)    AMOUNT
>
> SIGNATURE    EXP. DATE
>
> RE: CITY OF FRANKLIN
>
> | Date: | Account #: | Total Amount Due: |
> |---|---|---|
> | 01/07/2020 | ▉852 | $200.00 |
>
> Credit Management Control, Inc.
> PO Box 1654
> Green Bay WI 54305-1654

3

19. Defendant is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions ("DFI") pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74. *See* http://www.wdfi.org/fi/lfs/licensee_lists/Default.asp?Browse=CA (last accessed January 27, 2020).

20. According to the DFI's website, the effective date of the "Collection Agency" license for Defendant's Green Bay address was November 1, 1980.

21. Defendant mailed Exhibit A on or about January 7, 2020, almost twenty years after Defendant's "Collection Agency" license was approved.

22. Exhibit A does not state that Defendant holds a "Collection Agency" license issued by the Division of Banking.

23. Exhibit A does not refer the consumer to the Division of Banking.

24. As of January 7, 2020, when Defendant mailed Exhibit A, Defendant had a duty to disclose its status as a Collection Agency licensed by the Division of Banking in the Wisconsin Department of Financial Institutions.

25. Wis. Admin. Code Ch. DFI-Bkg. 74 states, in part:

**DFI-Bkg 74.13  Fair collection practice notice.**

> **(1)** Unless the initial communication is written and contains the following notice or the debtor has paid the debt, a licensee shall send the debtor the following notice within 5 days after the initial communication with a debtor: "This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org."  This notice shall be in at least 8 point type and shall be typed or printed on either a collection notice or on the validation of any debt directed to the debtor by the licensee pursuant to Section 809 of the Federal Fair Debt Collection Practices Act.
>
> **(2)** Where the notice required by sub. (1) is printed on the reverse side of any collection notice or validation sent by the licensee, the front of such notice shall bear the following statement in not less than 8 point type:  "Notice: See Reverse Side for Important Information."

4

26. Pursuant to Wisconsin law, any debt collector that holds a "Collection Agency" license pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74 must disclose its licensing status to the consumer along with, or within five days of, the initial communication with the consumer.

27. Wis. Admin. Code Ch. DFI-Bkg. 74.13 requires the licensee to provide the disclosure stating that "This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org." The Administrative Code refers to the licensing disclosure as the "Fair Collection Practice Notice." *Id.*

28. A principal purpose of the Fair Collection Practice Notice is to advise the consumer that the Collection Agency is subject to State regulation and advise the consumer where she may direct complaints or concerns regarding the licensee.

29. The DFI expressly requires not only that the Collection Agency provide the Fair Collection Practice Notice, but also requires that the Fair Collection Practice Notice be made conspicuous to the consumer by requiring the collection agency to provide it in at least 8-point type and to provide a notice directing the consumer to it when the debt collector provides it on the back of the letter. Wis. Admin. Code § 74.13(1) and (2); *cf. also, e.g., Carbajal v. Capital One, F.S.B.*, No. 03-cv-1123, 2003 U.S. Dist. LEXIS 20065, at *6 (N.D. Ill. Nov. 10, 2003) (collecting cases and observing that the FDCPA "does not require that the validation notice be placed on the front of the collector's initial letter. If the notice is on the back of the letter, however, there must be a prominent reference to it on the front, which must advise the debtor, at a minimum, that there is 'important information' on the reverse side of the letter.").

30. Licensees have a duty to provide the Fair Collection Practice Notice. Wis. Admin. Code Ch. DFI-Bkg. 74.13.

31. Defendant's failure to provide the Fair Collection Practice in <u>Exhibit A</u> is materially deceptive and unfair to the unsophisticated consumer because it does not alert the consumer that Defendant was subject to regulation by the Division of Banking and does not alert the consumer that she may direct concerns and other inquiries about Defendant's collection practices to the Division of Banking.

32. Further, the Fair Collection Practice Notice is also material to the consumer because it provides information regarding the debt collector's legitimacy and power to collect the debt. *See, Derosia v. Credit Corp. Sols.*, 17-cv-1671-WED, 2018 U.S. Dist. LEXIS 50016, at *7-8 (E.D. Wis. Mar. 27, 2018) (citing *Radaj v. ARS Nat'l Services, Inc.*, No. 05-cv-0773, 2006 U.S. Dist. LEXIS 68883, at *9-10 (E.D. Wis. Sept. 12, 2006)).

33. Plaintiff read <u>Exhibit A</u>.

34. Plaintiff was confused and misled by <u>Exhibit A</u>.

35. The unsophisticated consumer would be confused and misled by <u>Exhibit A</u>.

36. Plaintiff had to spend time and money investigating <u>Exhibit A</u>, and the consequences of any potential responses to <u>Exhibit A</u>.

### *The FDCPA*

37. Debt collection letters containing alleged misrepresentations of consumer's validation rights, inherently create the risk of the kinds of harm the FDCPA was intended to prevent – including that the consumer will forfeit "the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities." *Evans v. Portfolio Recovery Assocs.*, LLC, 889 F.3d 337, 348 (7th Cir. 2018), *quoting Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998); *see also* 15 U.S.C. § 1692e(2)(a); *Boucher v. Fin. Sys. of Green Bay,* 880 F.3d 362, 368 (7th Cir. 2018); *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679,

684 (7th Cir. 2017) (risk of payment resetting the statute of limitations); *Larkin v. Fin. Sys. of Green Bay Inc.,* No. 18-C-496, 2018 U.S. Dist. LEXIS 191305 (E.D. Wis. Nov. 8, 2018) (plaintiff had standing for her claim that creditor misrepresented that it maintained a credit rating for the plaintiff, even when the claim failed on the merits"); *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector [that the debt collector is licensed as a debt collector in Wisconsin] has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this

7

Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

38. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

8

Case 2:20-cv-00129-NJ    Filed 01/28/20    Page 8 of 15    Document 1

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

39. Plaintiffs who allege that debt collectors engaged in unfair collection practices or withheld materially important substantive information about the collection agency in a dunning letter have standing, as such misrepresentations risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt.*, No. 18-CV-1484, 2019 U.S. Dist. LEXIS 134377 *8-9 (E.D. Wis. Aug. 9, 2019) ("Protecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect,' under the FDCPA. If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.") (internal citations omitted); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz*

*v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

40. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

41. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

42. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

### *The WCA*

43. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

44. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

45. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

46. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

47. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

48. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

49. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

50. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

11

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

51. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

52. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

53. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

54. Wis. Stat. § 427.104(1)(m) states that a debt collector may not "Engage in conduct in violation of a rule adopted by the administrator after like conduct has been restrained…."

## COUNT I – FDCPA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. Defendant is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

57. Defendant held its "Collection Agency" license when it mailed Exhibit A to Plaintiff.

58. Licensed Collection Agencies have a duty to provide the Fair Collection Practice Notice in, or within five days of, their initial communication with the consumer regarding "any debt."

59. Exhibit A does not provide the Fair Collection Practice Notice.

60. Defendant did not provide the Fair Collection Practice Notice within five days of Exhibit A.

61. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## COUNT II - WCA

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Defendant is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

64. Defendant held its "Collection Agency" license when it mailed Exhibit A to Plaintiff.

65. Licensed Collection Agencies have a duty to provide the Fair Collection Practice Notice in, or within five days of, their initial communication with the consumer regarding "any debt."

66. Exhibit A does not provide the Fair Collection Practice Notice.

67. Defendant did not provide the Fair Collection Practice Notice within five days of Exhibit A.

68. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(m).

## CLASS ALLEGATIONS

69. Plaintiff brings this action on behalf of a proposed class, consisting of: (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit A to the complaint in this action, (c) which was seeking to collect an alleged debt which was incurred for personal, family, or household purposes (d) between January 28, 2019 and January 28, 2020, inclusive, (e) that was not returned by the postal service.

70. The class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the class.

71. There are questions of law and fact common to class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and/or the WCA.

72. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

73. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

74. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

75. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

14

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 28, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com